**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **JOHNNY CONNER NICHOLS,** | : | |
| **Plaintiff,** | : | |
| | : | **NO.  5:11-CV-116 (MTT)** |
| **VS.** | : | |
| | : | |
| **DR. EDWARD HALE BURNSIDE,** | : | |
| | : | **Proceedings Under 42 U.S.C. §1983** |
| **Defendant.** | : | **Before the U.S. Magistrate Judge** |

<u>**RECOMMENDATION**</u>

Before the Court is a Motion to Dismiss filed by Defendant Dr. Edward H. Burnside.  Doc. 16.  Because Plaintiff Johnny Conner Nichols has sufficiently stated an Eighth Amendment claim for deliberate indifference to his serious medical needs against Defendant Burnside in his individual capacity, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

This action involves claims of deliberate indifference to Plaintiff's serious medical needs. On a motion to dismiss, all well-pleaded facts in the complaint are accepted as true and construed in the light most favorable to Plaintiff.  Because Plaintiff is proceeding pro se, his pleadings are liberally construed.

According to the Complaint, the facts of the case are as follows: On March 11, 2010, Plaintiff entered the Georgia Diagnostic and Classification Prison (GDCP) in Jackson, Georgia. Plaintiff states that, on that day, prison physician Defendant Dr. Burnside was informed of a recent back injury, for which Plaintiff had received a Toradol pain injection.  Plaintiff further states that Dr. Burnside was made aware that the pain persisted and that Plaintiff had only partial use of one

of his arms. Also on that date, Plaintiff maintains that Nurse Johnson scheduled him to see a doctor on March 16, 2010. Plaintiff asserts that he was not seen by a doctor on March 16, 2010.

Plaintiff's next contact with Defendant Burnside occurred on March 23, 2010. After refusing Plaintiff's request for a prescription of Tylenol 3, Burnside allegedly exclaimed, "The MRIs which have been ordered for you are more than you would have gotten from me." [1] Pl.'s Compl. (Doc. 1). The following day, Plaintiff received another Toradol pain injection and was started on regular Tylenol.

On April 13, 2010, Plaintiff was informed by Dr. Burnside that the Department of Corrections' Utilization Management division refused to authorize the MRI referred to above. During this encounter, Burnside also refused Plaintiff's immediate request for the MRI to be reordered. On May 11, 2010, allegedly as a result of the letters and requests for treatment that had since been sent by Plaintiff and his family members to GDOC Director of Utilization Management Mr. Abreu, Burnside reordered the MRI. That same day, Burnside also prescribed a sixty-day course of indomethacine pain medication for Plaintiff.

On June 28, 2010, Plaintiff spent the day at the Augusta State Medical Prison, where he underwent an MRI of his lower back. The following day, Plaintiff claimed that the MRI should have been of his upper as opposed to his lower back, and asked Dr. Burnside to order another MRI. Burnside refused this request as well as Plaintiff's contemporaneous request for a refill prescription of pain medication.

---

[1] It is unclear who ordered an MRI for Plaintiff. Additionally, there is no indication of when the MRI was ordered or when it was to occur.

According to Plaintiff, his sixty-day course of indomethacine pain medication ran out on July 11, 2010.  Over the next several months, despite multiple requests, Burnside repeatedly refused to order another MRI or to prescribe Plaintiff any more pain medication.  On October 6, 2010, after denying yet another request by Plaintiff seeking a second MRI, Burnside authorized Plaintiff's pain medication to be refilled.  Then, on December 14, 2010, Burnside ordered a Nerve Blockage test for Plaintiff.

Based upon the above, Plaintiff filed the instant action alleging Eighth Amendment violations on the part of Dr. Burnside, Mr. Abreu, and GDCP Warden Steve Upton.  In relief, Plaintiff demanded (1) $750,000.00 in compensatory damages, (2) $250,000.00 in punitive damages (3) attorney's fees (4) injunctive relief in the form of an immediate transfer and the provision of appropriate medical care, and (4) any further relief deemed by the Court to be just and proper.

 Following a frivolity review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff's claims against Mr. Abreu and Warden Upton were Dismissed.  See Doc.7 and Doc.10.  Furthermore, in view of Plaintiff's transfer to Hays State Prison, Plaintiff's request for injunctive relief was denied as moot.  Id.  Indeed, Plaintiff's only surviving claim was that against Dr.  Burnside.  In response, on August 31, 2011, Dr. Burnside filed the filed the instant Motion to Dismiss. Doc. 16.

<u>DISCUSSION</u>

In his Motion to Dismiss, Defendant Burnside advances several arguments including abuse of process, failure to state a claim, and qualified immunity. Defendant Burnside is protected by Eleventh Amendment immunity from suit in his official capacity. Plaintiff, however, has stated a claim against Burnside in his individual capacity, and the Court cannot find at this juncture that he is entitled to qualified immunity.

**Abuse of Process**

Burnside argues that Plaintiff's claims should be dismissed for abuse of the legal process because Plaintiff provided an incomplete response and failed to disclose all of his previous lawsuits in his complaint. Dismissal for abuse of process is not warranted in this case, however, because Plaintiff's errors involving disclosure of his previous lawsuits appear to be due to oversight rather than "bad faith litigiousness or manipulative tactics."

Plaintiff filed his complaint using the Court's standard questionnaire. In response to the question asking if Plaintiff had filed any previous lawsuits dealing with the same facts, Plaintiff answered "yes." Plaintiff then listed a February, 2010 lawsuit in the Middle District of Georgia concerning an inoperable light in his cell which was promptly dismissed as frivolous.

Defendant contends this response was incomplete and inaccurate because Plaintiff: (1) incorrectly indicated that the February, 2010 case involved the same facts as the instant case (2) failed to list a state court mandamus action against Warden Upton that did involve the same facts as the instant case, and (3) failed to disclose a third lawsuit that was dismissed as frivolous. In his Reply (Doc. 22) to Plaintiff's Response (Doc.20) to the instant motion to dismiss, Burnside contends that Plaintiff has filed a total of four previous lawsuits. According to Burnside, these lawsuits included: (1) Nichols v. Head, Case No. 5:10cv71 (M.D. GA); (2) Nichols v. Upton, Case No. 10-ID-8 (Superior Court of Butts County, Georgia); (3) Nichols v. Chatman, Case No. 1:09cv886 (N.D. GA); and (4) Nichols v. Myrick, Case No. 10-ID-7 (Superior Court of Butts County, Georgia).

In response, Plaintiff explains that he listed Nichols v. Head as a previous lawsuit involving the same facts as the instant case on the basis that both cases concerned alleged violations of his Eighth Amendment rights. With regard to Nichols v.Upton, Plaintiff points out that, though the case

was not listed in the appropriate place on his complaint form, it was disclosed and referred to in the body of his complaint.  As for Nichols v. Myrick, Plaintiff maintains that, while he did submit this action, it was "declined filing" by the Superior Court.  Moreover, Plaintiff contends that the claims raised in Nichols v. Myrick did not involve his imprisonment, but rather were a request for judicial review of the administrative procedure act.  Finally, with respect to Nichols v. Chatman, Plaintiff adamantly denies that it is his filing and further avers that he has never filed nor submitted for filing any action in the Northern District of Georgia.

Plaintiff's explanations with regard to his decision to list Nichols v. Head, his disclosure and inclusion of  Nichols v.Upton, and his rationale for failing to disclose  Nichols v. Myrick appear reasonable.  The docket report of Nichols v. Chatman, Case No. 1:09cv886 (N.D. GA) indicates that it is a 28 U.S.C. §2254 petition that filed by Johnny Wayne Nichols GDC  167156, not Plaintiff Johnny Conner Nichols GDC 1060162. Absent any other demonstration of bad faith or a willful attempt to introduce false or misleading information to the Court, imposition of the sanction of dismissal under   FED. R. CIV. P. 11(c) would not be appropriate.   Accordingly, it is **RECOMMENDED** that Defendant Burnside's motion to dismiss for abuse of process be **DENIED**.

## Claims Against Defendant in His Official Capacity

Plaintiff's claims against Defendant Burnside in his official capacity are barred by the Eleventh Amendment. The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. Lassiter v. Alabama A & M University, 3 F.3d 1482, 1485 (11th Cir. 1993).  Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. Carr v. City of Florence, Ala., 916 F.3d 1521, 1525 (11th Cir.

1990).  Thus, if the state has not waived its immunity, the Eleventh Amendment bars a Section 1983 suit against that state. <u>Cross v. State of Ala.</u>, 49 F.3d 1490 (11th Cir. 1995). By extension, the Eleventh Amendment also bars Section 1983 suits against state officials in their official capacities, because in such a case, the state is considered the real party in interest since an award of damages would be paid by the state.  <u>Id</u>. at 1503.

In this case, Defendant Burnside is protected by Eleventh Amendment immunity. The State of Georgia has specifically preserved its Eleventh Amendment Immunity in the state constitution. Ga. Const. Art. 1, Sect. II, Par. IX(f).  As explained above, official capacity defendants are not persons.  As such, any Section 1983 claims against Defendants in their official capacity are not permissible. Accordingly, it is hereby **RECOMMENDED** that Plaintiff's claims against Defendant Burnside in his official capacity be **DISMISSED**.

## Claims Against Defendant in His Individual Capacity

Defendant Burnside argues that Plaintiff's Complaint fails to state a claim.  At this stage of the proceedings, however, Plaintiff's contentions are adequate to state a claim that Defendant Burnside was deliberately indifferent in refusing to provide him with timely treatment for his back injuries.

The Eighth Amendment prohibits cruel and unusual punishment, including deliberate indifference to a serious medical need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Campbell v. Sikes,</u> 169 F.3d 1353, 1363 (11th Cir. 1999). To show deliberate indifference, the prisoner must satisfy both an objective and a subjective component. <u>Campbell</u>, 169 F.3d at 1363. With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official

to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and, (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

The elements required to prove the subjective component of a deliberate indifference claim establish that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under 42 U.S.C. § 1983. Taylor, 221 F.3d at 1258. Moreover, and equally important in the context of this case, a prisoner cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him. Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985). Such course of treatment claims, by definition, involve the "exercise of professional judgment," Estelle, 429 U.S. at 105, and as such are not actionable.

According to the Complaint, Defendant Burnside learned of Plaintiff's severe back injuries soon after Plaintiff arrived at GDCP. In spite of his familiarity with Plaintiff's condition, treatment history, and need for diagnostic testing in the form of an MRI already ordered by another physician, Defendant Burnside repeatedly refused to provide Plaintiff with timely and appropriate medical treatment. In particular, Plaintiff contends that Burnside's actions caused an unreasonable delay in the initial MRI, prevented him from receiving an MRI of the correct area of his back, and deprived him of medically necessary pain medication from July 11, 2010 through October 6, 2010.

Although Defendant correctly argues that a difference of medical opinion does not amount to deliberate indifference, Plaintiff alleges more than a mere difference of medical opinion.

Plaintiff's allegations, if proven, could demonstrate an unconstitutional delay in the provision of medical care and attention during his confinement at GDCP. Absent any medical records, the Court cannot conclude at this stage in the proceedings that this case amounts to a mere difference of medical opinion. Accordingly, it is **RECOMMENDED** that Defendant's Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference claims be **DENIED**.

## Qualified Immunity

Defendant Burnside contends that, to the extent that he is being sued in his individual capacity, he is entitled to qualified immunity because Plaintiff has failed to show that he has suffered any constitutional deprivation. Contrary to this assertion, Plaintiff has adequately alleged an Eighth Amendment claim of deliberate indifference to his serious medical needs. Plaintiff's claims, as discussed above, amount to more than a mere disagreement over the method and course of treatment. Such conduct, if proved, would amount to deliberate indifference under clearly established federal law. See Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). As such, Defendant Burnside has failed to demonstrate that he is entitled to qualified immunity based on the allegations in Plaintiff's Complaint.

## Attorney's Fees

Plaintiff also requests reasonable attorney's fees. In civil rights actions, the court may allow the prevailing party to recovery reasonable attorney's fees. 42 U.S.C. § 1988. A pro se plaintiff, however, is not entitled to attorney's fees. Kay v. Ehrler, 499 U.S. 432, 434-435 (1991). Because Plaintiff is proceeding pro se, he is not entitled to recover attorney's fees. Accordingly, it is hereby **RECOMMENDED** that Plaintiff's request for reasonable attorney's fees be **DENIED**.

## CONCLUSION

For the reasons stated above, it is hereby **RECOMMENDED** that Defendant's Motion to

Dismiss be **GRANTED** in part and **DENIED** in part.  Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom the case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy thereof.

      **SO RECOMMENDED**, this 25th day of July, 2012.

<br>

                         s/ Charles H. Weigle         
                         Charles H. Weigle
                         United States Magistrate Judge